# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| WILLIAM WEAVER, | ) |
|       Petitioner, | ) |
| vs. | ) Case No. 11-0507-CV-W-HFS-P |
| DAVE DORMIRE, | ) |
|       Respondent. | ) |

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS, AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, William Weaver, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 18, 2011, seeking to challenge his 2003 convictions and sentences for first degree assault and armed criminal action, which were entered in the Circuit Court of Clay County, Missouri.

Petitioner raises three grounds for relief: (1) that the trial court erred in not affording petitioner jury sentencing; (2) that trial counsel was ineffective in failing to present evidence of petitioner's Post-traumatic Stress Disorder (PTSD); and (3) that petitioner is innocent of first degree assault and armed criminal action. Respondent contends that grounds 1 and 3 do not state cognizable grounds for federal habeas relief, and that ground 2 is without merit.

## SUMMARY OF FACTS

On appeal from the denial of petitioner's Mo. Sup. Ct. Rule 29.15 motion, the Missouri Court of Appeals summarized the facts as follows:

> On March 11, 2002, Jonathon [sic] Davis, a high school senior, was driving in his '78 Ford Bronco to his parents' home at 5214 North Bristol Lane in Kansas City, Missouri. Five houses down from his parent's [sic] home, Davis stopped to talk to [petitioner] and [petitioner's] brother, Rusty Weaver, who were both standing on the edge of the road. Davis had known the Weavers most of his life. As he stopped the vehicle, Rusty pushed [petitioner] to the ground. Rusty

then asked Davis if Davis would give him a ride somewhere. When Davis said yes, Rusty stated that he needed to grab a shirt. As Rusty started toward the house, [petitioner] grabbed Rusty and threw him to the ground. [Petitioner] then tried to open the door to the Bronco and pull Davis out. Davis pulled forward and managed to shut the door. Davis tried to drive away but [petitioner] grabbed Rusty and threw him to the ground in front of the Bronco, blocking the way. After Rusty arose, Davis drove to his parents' home.

After talking with his parents for about 30 to 45 minutes, Davis left the home to pick up some food for the family. When he got outside, he noticed [petitioner] standing eight to ten feet away, pointing a shotgun at him. [Petitioner] stood there swaying back and forth for three to four seconds. He then said, "Now you're dead, you son-of-a-bitch," and fired the shotgun, hitting Davis in the left side of his face. [Petitioner], holding the shotgun at his side, walked quickly to the end of the driveway and then ran toward his house.

As a result of the shotgun blast, Davis's jaw was shattered. He required a multitude of surgeries and was hospitalized for three weeks. His face is permanently disfigured.

[Petitioner] was arrested and charged with one count of first-degree assault and one count of armed criminal action. At the request of the defense, [petitioner] underwent a mental examination. The report from the exam reflected that, at the time of the shooting, [petitioner] had been capable of telling right from wrong and conforming his conduct to the law and that he was competent to stand trial. After [petitioner] was adjudged competent to stand trial, he was tried by jury and found guilty as charged. The trial court sentenced [petitioner] to consecutive terms of thirty years imprisonment on each count. n.1 On July 12, 2005, [petitioner]'s convictions and sentences were affirmed on appeal. *State v. Weaver*, 178 S.W.3d 545, 548 (Mo. App. W.D. 2005).

> n.1 During the course of trial, [petitioner] requested sentencing by the Court, and the State had no objection thereto.

(Petitioner's Exhibit J, pp. 2-3).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d

1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **GROUNDS 1 & 3**

In his first ground for relief, petitioner contends that the trial court erred in not affording him jury sentencing. In his third ground for relief, petitioner claims that he is innocent of the crimes for which he was found guilty. As seen below, neither of these grounds are cognizable in a federal habeas proceeding.

The State of Missouri mandates jury sentencing unless, *inter alia*, the defendant "requests in writing, prior to voir dire, that the court assess the punishment in case of a finding of guilt." MO. REV. STAT. § 557.036(4)(1). However, as noted by the Missouri Court of Appeals, "there is no [Federal] constitutional right to jury sentencing." (Respondent's Exhibit E, pg. 3) (citing State v. Emery, 95 S.W.3d 98, 102 (Mo. banc 2003); Ring v. Arizona, 536 U.S. 584, 597 n.4 (2002)). A review of the relevant case law confirms the state court's conclusion.

Where a petitioner can show only a violation of state law, he has not stated a cognizable ground for relief in a federal habeas corpus proceeding. "[F]ederal habeas corpus relief does not lie for errors of state law . . . [and] it is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." Evanstad v. Carlson, 470 F.3d 777, 782 (8th Cir. 2006)

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-3-

(quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). Therefore, relief cannot be granted on ground 1 since it is based on alleged state-law error.

Likewise, petitioner's claim of actual innocence does not state a cognizable ground for relief. The Eighth Circuit "ha[s] squarely rejected the notion that a prisoner may receive a writ simply because he claims he is innocent." Burton v. Dormire, 295 F.3d 839, 848 (8th Cir. 2002). Petitioner must show "an independent constitutional violation occurring in the underlying state criminal proceeding" to obtain habeas relief. Id. As seen *infra* in the discussion of ground two, petitioner does not make such a showing.

Grounds 1 and 3 are denied.

## GROUND 2

In his second ground for relief, petitioner contends that trial counsel was ineffective in not presenting evidence of petitioner's PTSD. Among other documents, petitioner has provided the Court with a Pre-sentence Investigation done by the Missouri Board of Probation and Parole. The Investigation reveals the following about petitioner's background:

> [Petitioner] served in the U.S. Army from July 1970 until May 1972. [Petitioner] served in Vietnam and received two bronze service stars. [Petitioner] reports having received an Honorable discharge. During Vietnam, [petitioner] served as a clerk typist. [Petitioner] reports when he first landed in Cameron Bay, he saw a bus with no windows running along side of the plane. The pilot told the men they should keep their heads down and run to the bus to prevent getting shot. [Petitioner] also reports he shot one Vietnamese and that memory and others from Vietnam have led to many of his problems.
>
> According to VA records, [petitioner] suffers from several medical and psychiatric problems, some of which are alcohol induced. [Petitioner] has tested positive for Hepatitis B and C and has reoccurring problems with a bulging disc. All medical problems have been addressed through the VA. [Petitioner] self reports having problems sleeping and states alcohol helps him. [Petitioner] states he has a reoccurring dream where

> he is being chased as he is running along the wall of the basement. When he enters the basement, he sees dead soldiers laying on the floor and guns laying around. He grabs the gun and then he sees soldiers dressed in Russian uniforms coming at him. He states at that point he wakes up scared. [Petitioner] reports having attempted suicide on two occasions by hanging himself and attempting to overdose on medication. VA records indicate [petitioner] has been suicidal on 12 occasions. VA records report [petitioner] has a history of substance abuse induced mood disorder, Bipolar affective disorder, and Post Traumatic Stress disorder. [Petitioner] has actively been seen at the VA from 1997 until the current offense occurred.
>
> . . .
>
> [Petitioner] reports having first smoked marijuana while in Vietnam and last smoking in 1974. Records obtained from the VA indicate [petitioner] tested positive for marijuana in 1997, 1999, and 2000. [Petitioner] denies using any other illegal substances, but records from the VA indicate [petitioner] tested positive for cocaine and opiates in 2000. [Petitioner] reports he began drinking alcohol in Vietnam, but did not have a problem with its use until returning to the States and seeing the movie Platoon. According to [petitioner], the movie led to his guilt over the things he had done and seen in Vietnam and it was at that point he knew he was an alcoholic. [Petitioner] reports he has been drinking for 32 years and his time incarcerated on this offense has been his longest term of sobriety. Records from the VA indicate alcohol intoxication has occurred since 1997. It should be noted since 1997, [petitioner] has been in the VA 18 times for alcohol related problems. [Petitioner] received inpatient and outpatient substance abuse treatment on numerous occasions through the VA.

(Petitioner's Exhibit V, Pre-sentence Investigation, pp. 3-4).[2]

Petitioner claims that trial counsel's failure to investigate or present a claim of PTSD, to negate the *mens rea* required for first degree assault, constitutes ineffective assistance. Federal habeas review of petitioner's ineffective assistance of counsel claim is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1420 (2009). First, petitioner must overcome the high bar of Strickland v. Washington, 466 U.S. 668 (1984), by showing that (1)

---

[2]The Court has thoroughly reviewed this document, along with all others presented by petitioner.

counsel's performance fell below an objective standard of reasonableness; and (2) petitioner was sufficiently prejudiced such that "the result of the proceeding would have been different." Id. at 688, 694. Second, under 28 U.S.C. § 2254, petitioner must show that the state court's adjudication of his ineffective assistance claim was "unreasonable." Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 788 (2011). Both the Strickland standard and the standard set forth in § 2254 are highly deferential. Ultimately, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 131 S. Ct. at 788.

On appeal from the denial of petitioner's Mo. Sup. Ct. Rule 29.15 motion, the Missouri Court of Appeals disposed of ground 2 as follows:

> [Petitioner] claims that the trial court erred in concluding that his trial attorney was not ineffective for failing to adequately investigate and present evidence of his post-traumatic stress disorder. He argues that, had this evidence been discovered and presented at trial, there is a reasonable likelihood that the jury would have found that he lacked the requisite *mens rea* to support his convictions.
>
> . . .
>
> [Petitioner]'s trial counsel testified that he made the decision not to further investigate or pursue a defense based upon post-traumatic stress disorder after receiving the report from the court-ordered mental examination. That report was submitted to the motion court but is not included in the record on appeal. n.2 Without being able to review the contents of the report, this Court cannot possibly assess the reasonableness of counsel's decision not to further pursue this possible defense. Accordingly, [petitioner] has failed to satisfy his burden of presenting this court with a sufficient record from which to determine the issues on appeal. ***Neisler v. Keirsbilck***, 307 S.W.3d 193, 196-97 (Mo. App. S.D. 2010) (quoting **Rule 81.12**). "Without the required record, this Court has nothing to review." ***Id.*** at 197 (internal quotation omitted).
>
>> n.2 The motion court took judicial notice of the entire court file in the underlying case, which contained this report.

Furthermore, even if [petitioner] could establish that counsel's actions were unreasonable, the record does not establish that [petitioner] was prejudiced by counsel's failure to further investigate and present evidence of his post-traumatic stress disorder. In presenting a defense of diminished capacity, "the existence of a mental disease or defect will not alone suffice to diminish the defendant's criminal responsibility." ***Nicklasson v. State***, 105 S.W.3d 482, 484 (Mo. banc 2003). Evidence must be presented from which the jury could determine that the "mental disease or defect prevented the defendant from forming the requisite mental state at the time of the offense." ***Id.*** at 485.

With regard to post-traumatic stress disorder, Dr. Sisk [- petitioner's expert witness at the Rule 29.15 evidentiary hearing -] testified that "[i]n a small number of cases people actually re-experience and feel like they are present again in that traumatic scene, and they get the same sensations, sounds, sights, feelings that they had at the time of the original traumatic event" and that "conceivably somebody suffering from a severe or prolonged or chronic PTSD could possibly actually believe they are subjectively back in the traumatic situation." Dr. Sisk offered the following testimony at the close of direct examination:

> Q: If an individual was suffering from post-traumatic stress disorder, for example, due to exposure to combat zones in Vietnam, and assuming he was drinking to self-medicate, and experiencing symptoms of post-traumatic stress disorder or a triggering event, hypothetically, would shooting at a neighborhood teenager be consistent with someone suffering from that disorder?
>
> A: It could be.
>
> Q: And in this case it could have been a factor, as far as your concerned?
>
> A: That's correct.

On cross-examination, Dr. Sisk acknowledged that he couldn't say whether [petitioner] was reliving any experience at the time of the shooting because he had not personally examined him. As noted in the motion court's decision, "at no point in his testimony did [Dr. Sisk] offer an opinion that [petitioner] thought he was back in Vietnam when the shooting occurred, nor did he state an opinion that [petitioner] did

-7-

> not knowingly shoot the victim."
>
> Likewise, the testimony of [petitioner]'s family members presented at the evidentiary hearing, while potentially supportive of a diagnosis of post-traumatic stress disorder, would not support a finding that post-traumatic stress disorder prevented [petitioner] from acting knowingly at the time of the shooting. And while [petitioner] testified at the evidentiary hearing that he did not have any memory of the events surrounding the shooting and that post-traumatic stress was the only reason he could think of for the shooting to have occurred, he has not claimed that he would have testified at trial or that counsel was ineffective for failing to call him to testify. Furthermore, the motion court was not required to accept any of [petitioner]'s testimony, or that of any of his witnesses, as credible. **Hurst v. State**, 301 S.W.3d 112, 117 (Mo. App. E.D. 2010) ("At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness, including that of the Movant.").
>
> The motion court cannot be deemed to have clearly erred in concluding that the record did not establish a reasonable probability that, but for counsel's failure to further investigate and present evidence related to [petitioner]'s post-traumatic stress disorder, the result of the proceeding would have been different. **James**, 222 S.W.3d at 304. Point denied.

(Respondent's Exhibit J, pp. 3-7).

The resolution of ground 2 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).[3] Applying the <u>Richter</u> standard of review to the facts as set forth in the record, a

---

[3] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal

-8-

reasonable argument can be made that counsel's actions did not fall outside of the wide spectrum of allowable representation under Strickland. Richter, 131 S. Ct. at 788.

Ground 2 is denied, and the case will be dismissed, with prejudice.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

    /s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: February 7, 2012.

---

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.